STATE *ex rel.* H. W. LONG, Petitioner, v. WILLIAM BISHOP, State Treasurer, Respondent.

*Union Military Fund—Revenue.*—The act of the General Assembly (Sess. Acts 1863, p. 27, § 9) appropriates all the moneys collected under the act to the payment and redemption of the bonds issued under the act. The expenses of assessing and collecting the tax are not to be paid out of the moneys collected for this fund.

*Petition for Mandamus.*

*Ewing & Smith,* for petitioner.

I. Although this is ostensibly a controversy between the Assessor of Cole County and the Treasurer of the State, yet it is really a controversy between two co-ordinate branches of the Executive departments of the State Government, the Auditor and Treasurer.

The question or matter of difference between these two officials is, whether the Auditor is authorized by law or reason in drawing his warrants on the Treasurer for compensation due assessors of the several counties for making assessments under an act of the General Assembly, approved February 20, 1865, (Sess. Acts 1865, p. 112,) providing for the assessment and collection of an additional tax on incomes, &c. This special tax is, by the provisions of the above named act, to be paid into what is termed the " Union Military fund." This is an independent and separate fund created for specific purposes. (Sess. Acts 1863, p. 27, § 9.)

Out of what fund should the expenses incurred in the as-

sessment of this "Union Military fund" be paid? The natural and reasonable presumption is, that such expenses should be paid out of said fund. Ought it not to pay its own way? How is it with other funds? The Revenue, School, Asylum, and other funds, pay all the expenses incurred in their management. What provision of the law directs the payment of the expenses of this fund to be different from others? There is no such law. By analogy it would seem this fund should pay its own way.

Section 31 of the Militia law, approved February 20, 1865, (Sess. Acts 1865, p. 56,) provides that " all taxes levied and collected for military purposes, all fines imposed  *  *  * and all other appropriations and levies made for the benefit of the militia, shall be paid into the State Treasury to the credit of the ' Union Military fund.' Out of such fund shall first all sums due the Enrolled militia, Union Military bonds, and expenses incurred according to law," &c. This section is strangely inserted in the Militia law. It should manifestly belong to the Revenue law. It is retained in the ordinance of the late Convention making another Militia law. It is still the law of the land. Herein we gather something of the intendment of the law-makers. It is plain from this section, that the expenses incurred in collecting, &c., of this fund, is to be paid out of the same.

This assessment was made to increase the Union Military fund—to add thereto—by the provisions of the said act to levy taxes on incomes. Inasmuch as the act under which Long made his assessments is silent as to the fund out of which he shall receive his compensation, still there can be no reason why he should not be paid out of this fund, as is provided in said sec. 31. There is nothing that we can find either in the law, or analogy to other funds, that does not authorize the Auditor in drawing his warrant on the Union Military fund for expenses incurred in its assessments.

What is the necessity for an appropriation? If an appropriation be necessary, why is it that the collectors, in their settlement for the collection for the Union Military fund,

have always been paid out of the same fund without any appropriation ?

*Wingate,* for respondent.

As to warrants the Treasurer may not pay.—The Treasurer cannot pay a warrant not drawn as required by law. (See 2d s. d. § 1, p. 1547, R. C. 1855.)

If a warrant is drawn, and it be a departure from the form, in sense or purpose, prescribed by the R. C. 1855, sec. 14 & 15, p. 1545, it is a warrant not drawn as required by law, and the Treasurer cannot pay the same.

If a warrant is drawn, and it is *not* expressed in the body of the warrant the particular fund, appropriated by law, out of which the same is to be paid, the warrant is not drawn as required by law, and the Treasurer cannot pay the same. (See 3d s. d. of sec. 4, p. 1540, R. C. 1855.)

If the Auditor draws his warrant upon the Treasury to be paid out of moneys paid into the Treasury for a specific purpose, for which purpose the Treasurer is required to keep the same separate and apart; and if it is *not* expressed in the body of the warrant that the money to be paid on the same is for the specific purpose for which the same was set apart in the hands of the Treasurer, he cannot pay the same ; as, for instance, the Treasurer is bound by law to keep all moneys paid into the Treasury to the credit of the Union Military fund sacred for certain specific purposes.

Now, if a warrant drawn by the Auditor on this fund does not show upon its face that it is for one of the specific purposes for which the Treasurer is required to set money in this fund apart, he, the Treasurer, cannot pay the same. This must be, and is so, for the reason that the money of the fund cannot be paid out for any other purposes than those for which the same was created ; and for the reason also, that the law imposes upon him the obligation of keeping money paid into the Treasury for the purposes for which the same was paid into the Treasury, in this instance, whether for the payment of the sums now due the Enrolled Missouri

militia, or for the pay of Union Military bonds. (See sec. 9, pp. 27 & 28, Laws of 1863, and sec. 23 of ordinance of the Convention of 1865.)

As far, then, as it is necessary to enable the Treasurer to ascertain whether a warrant is drawn as required by law; whether it contains in the body of the warrant a statement of the particular fund appropriated by law, out of which the same is to be paid; whether the money for which the warrant is drawn has been previously appropriated by law; and whether, if the warrant is drawn for money belonging to and set apart by law for a specific purpose, it is specified in the warrant that the warrant is drawn for the specific purpose,— it is the duty of the Treasurer to examine the warrant, and question the act of the Auditor in drawing the same.— These are the legal requisites of a warrant, and if the warrant of the Auditor does not possess them, the Treasurer cannot pay it; otherwise the language of the second subdivision of sec. 1, p. 1547, R. C., can have no meaning. It is the duty of the Treasurer to know that a warrant, presented to him for payment, has been drawn in strict conformity with all the laws pointing out the requisites of a warrant before he pays the same.

If the Treasurer is the keeper of certain moneys for a specific purpose, must not a warrant for those moneys show upon its face that it is a warrant for those moneys for that purpose? If the warrant of petitioner herein is deficient in that it has not one or more of the requisites above named, the Treasurer cannot pay it.

Of what moneys the Union Military fund shall consist.— Sec. 9, pp. 27 & 28, at first provided, but sec. 23 of Militia ordinance of the Convention, passed April 8, 1865, now provides, as also "Additional Revenue Tax," p. 112, Laws of 1865.

For what specific purposes the Military fund was created. —Sec. 9, p. 28, Laws of 1863, first provided, but sec. 23 of Military ordinance of the Convention of 1865 now provides.

5—VOL. XXXVI.

The law authorizing the issue of Union Military bonds (of 1863), sec. 1, p. 26, Laws of 1863; where payable, *ibid.*; when payable, *ibid.*; what payable out of, sec. 9, p. 28, *id.*; which Union Military fund is pledged to the payment of these bonds alone, except as the ordinance of the Convention (sec. 23 of Militia law, passed April 8, 1865) modifies said sec. 9, p. 28, Laws of 1863.

By whom and in what manner paid, on presentation to the officer at whose office they are payable, secs. 1 & 7, pp. 26 & 27, Laws of 1863; Law " to enhance value of Union Military bonds," p. 15, Laws of 1863 & 1864; and " concerning redemption of Union Military bonds," p. 61, Laws of 1865. This last mentioned act should be construed in connection with and amendatory of the "Act (p. 15 of Laws of 1863 & 1864) to enhance value of Union Military bonds."

By whom cancelled, sec. 7, p. 27, Laws of 1863; and destroyed, joint resolution, p. 102, Laws of 1863 & 1864.

LOVELACE, Judge, delivered the opinion of the court.

The petition states that the relator, under the provisions of an act of the General Assembly of the State of Missouri entitled "An act to levy additional State taxes for the years 1865 and 1866," and the instructions of the Auditor of Public Accounts made in pursuance of said act, made an assessment of the county of Cole, and duly returned a book of the same to the County Court of Cole county, and that the compensation therefor allowed by law amounts to two hundred and eighty-four and $\frac{20}{100}$ dollars, and that the Auditor audited said account and drew his warrant for the same as follows: " No. 1035. Auditor's Office, 21st day of June, 1865. Treasurer of the State of Missouri, pay to H. W. Long, Assessor Cole county, two hundred eighty-four and $\frac{20}{100}$ dollars, out of any money appropriated for the pay of the Union Military fund, for expenses incurred according to law. (Signed) A. Thompson, Auditor. $284.20." That on the 3d day of July, 1865, the relator presented said warrant to the re-

spondent at his office in Jefferson City, Missouri, and demanded payment, which was refused; and the petition closes with a prayer that a peremptory writ of mandamus issue against said respondent commanding him to pay the amount due on said warrant.

The answer of respondent assigns among other reasons for not paying the warrant, the following: That there is no law authorizing or requiring the respondent, as State Treasurer, to pay said warrant out of the Union Military fund.

Many other objections are urged in the answer to the warrant in question, but they are all embraced in his statement above given.

In the act of the Legislature creating this fund, (Acts of 1863, p. 27, § 9,) after providing how this fund should be created and of what moneys it shall consist, it is enacted that "this fund shall be and is pledged for the payment and redemption of all the bonds, principal and interest, which may be issued under this act, (and shall be set apart by the Treasurer for that purpose only,) and shall be paid out under its provisions." This would seem a solemn appropriation of the whole of this fund for the sole and only purpose of redeeming the Military bonds issued under the provisions of that act, and would of necessity exclude the payment of any other claims or expenses.

In 1865 the Legislature passed an act in relation to the militia, which contained some sections bearing upon this fund; but in a few weeks afterwards that act was abrogated by the State Convention and "An ordinance for the organization and government of the Missouri militia" was passed in its stead. By the 23d section of this ordinance it is provided that "out of such fund (the Military fund) shall be paid first, all sums now due the Enrolled Missouri militia for services rendered and Union Military bonds now outstanding or hereafter to be issued; and second, all expenses incurred according to law and audited by the proper officers, and appropriations for military purposes as other claims

State ex rel. Long v. Treasurer.

against the State. I do not know that it is claimed that this warrant is to be paid under the provisions of the Convention ordinance as "expenses incurred according to law;" if it were so contended, it would be a sufficient answer that these expenses are put in the second class, and a large amount of bonds still unpaid are outstanding which belong to the first class, and must be paid before the second class is reached.

But the ground contended for by the relator is, that the services rendered were in behalf of the Union Military fund, and that each fund ought to pay its own expenses. This depends very much upon whether the Legislature has so provided. In this case the Legislature has expressly provided otherwise; as we have already seen, the Legislature, by the act of 1863, appropriated this fund exclusively to the redemption of Union Military bonds, and the ordinance of the Convention does not disturb this in the least, for it provides that these bonds shall be first paid out of this fund. But not only that, but there is an appropriation or fund set apart by the Legislature for the payment of the very expenses mentioned in this warrant—the appropriation for the expenses of assessing and collecting the revenue. (Sess. Acts 1865, p. 5.) Even if the assessment had been exclusively for the benefit of this fund (which it was not), still I apprehend it would be included in assessing the revenue. It would hardly be contended that the "Military fund" is not composed of revenue; and if it is, the expenses of assessing and collecting of it ought to be paid out of the general appropriation for assessing and collecting the revenue.

A peremptory mandamus cannot issue in this case commanding the Treasurer to pay the warrant out of the Military fund.

Mandamus refused; the other judges concurring.